I usually say good afternoon ladies and gentlemen but I guess it's just I'm the only lady and the clerk that everyone else is gentlemen plus our audience and my colleagues Judge Lee and Judge Tallman we welcome you. I see both are by video. We are here today in the Iktisamov, I probably really messed that up, versus Merrick Garland, 19-70757. Each side has 15 minutes. If you are the appellant or the petitioner in this matter, 15 minutes includes any time that you wish to reserve for rebuttal. So if you tell me when you make your state your appearance on the case, how long you would aspirationally like to save for rebuttal, I'm looking at a clock and I will try to notify you. The clock counts down and when it goes up it doesn't mean I gave you extra time, it means you're in overtime. But as far as that goes I want to make sure that my colleagues have enough opportunity to ask you any questions. So even if your time is expired, if I or one of my colleagues is asking you questions, please feel free to answer those questions. So we're ready for the petitioner. Good morning, good afternoon. Good afternoon, your honors. Will Edmondson, court-appointed pro bono counsel for petitioner Albert Iktisamov and I would like to request four minutes for rebuttal, please. Okay. So maybe you want to tell us there was a motion to reopen a case that you were notified about, but we don't know. Does that have any influence on this at all or we just go ahead and decide this case? I think because you were traveling, we were notified you were traveling. Yes, your honor. So we did file a motion to reopen a little over a week ago. That motion speaks to changed circumstances in Russia. Obviously the circumstances in Russia have been evolving very rapidly and along with those you know, base of knowledge about what's actually going on in Russia. So it's not joined by the government though. Is that correct? That is correct. And so and this, we sent this off to mediation so that for whatever reason that it didn't resolve there. So is there any reason that we shouldn't just go ahead and reopen the case? Yes, there is. Mr. Iktisamov came to the United States in search of a better life, has never been convicted of a crime, and testified credibly before the immigration judge without counsel. At that time, he articulated four reasons why he qualified for asylum, protection under the Convention Against Torture, and or statutory withholding of removal. Those four bases were that he avoided military service in Russia due to credible fear of being tortured through commonly applied hazing procedures in the Russian military, that he developed resulting anti-hazing views. Third, while in the United States, he converted to the Church of Latter-day Saints, a minority religion in Russia that faces particular persecution. And fourth, that he has articulated a that subject him to an even higher risk of being persecuted and tortured if he is returned to Russia. Counsel, before we get to all of that, how do we get around the agency's determination that pretermitted the asylum application as time barred? Thank you, Your Honor. With respect to the asylum time bar issue, the would speak to when he converted to the Church of Latter-day Saints, which could have constituted, and we believe likely would have constituted, a changed circumstance that would have renewed the time to make that application. But I thought the proffered evidence was that he converted sometime in 2016 or possibly 2015. So he still didn't meet the one-year deadline, did he? Your Honor, the testimony at the hearing, based on the petitioner's sort of unlearned, limited English skills-based approach without counsel, indicated that his conversion began in 2016, and that based on that date, the one-year time bar wouldn't have been able to be met. But he had a cell phone that he wasn't given access to, and at the time, it was believed that if he'd been given access to that cell phone, he could have gathered additional information about the timing of his involvement with the Church. Okay, but what evidence was before the agency in terms of what his proffer would have been? I'm a little vague on that, counsel. Thank you, Your Honor. Mr. Chisimov admittedly did not have a particular, he was not particularly good at articulating the specific details of the timing of this at the hearing, and in part that was because he was being forced to rely on his own memory of exactly when different events occurred. Okay, maybe you're getting there, but you're not really responding to my question. My question is, what would he have offered had he been able to produce, it's this woman who he says was a critical witness, what would she have said, and what was before the agency when the agency ruled that was insufficient? Candidly, we're not entirely sure what she would have said. We tried to locate her and were not able to. That having been said, what was essentially proffered, or as close to proffered as he was capable of articulating, is that his conversion occurred over a period of time, and there was reason to think that the moment during that period of time that would have started the clock anew could easily have been within a year when the petition was filed. But that's total speculation, and the standard of review is substantial evidence whether or not it supports the agency's determination that he missed the one-year filing deadline, and I would be hard pressed to say that as a court we could say that the evidence compels the conclusion that he would have been able to establish filing within one year on the basis of the record that's presently before us. I can understand. You understand the dilemma I have here? I can understand the reluctance to reach the conclusion that he actually met the one-year time bar, and that's why I think probably a course of action that would make sense would be a remand to allow him to have another hearing at which that issue could be effectively fully litigated with the available evidence that he could gather. But you still don't have this person. I would be the one that would know when I converted. There was every reason to believe that this information could have refreshed that recollection such that at a new hearing he'd be articulating exactly what Your Honor is pointing out in a way that he wasn't able to. The I.J. found him credible, right? The I.J. found him credible. Yes. So it wasn't that if he had been found not credible that might be a different story. But it appears that Mr. Ixtenisof repeatedly told the immigration judge that he had converted to Mormonism in 2016 and the I.J. found him credible. Since the I.J. found him credible, how has he been prejudiced by the I.J.'s failure to defer proceedings so that Mr. Ixtenisof could call Ms. Scott as a witness? I would say that it's not just that he's credible. He was found to be credible. That is correct. But I think, too, that doesn't indicate necessarily that his recollection of all the information was entirely comprehensive. And that's why the cell phone proved to be a procedural error that could have cured the one you're talking about. But in order to find a due process error here, we have to find that he was prejudiced. And I'm back to my conundrum. There's just no evidence here to say substantial evidence does not support the agency's determination that he missed the one-year time bar. I think based on what we have before us, that's true. But the procedural error of not allowing him access to the cell phone, while it might not have been the best evidence because his own recollection would have been better in and of itself, he would have been able to refresh that recollection. So it is true that we don't know what would have been said if that had happened. So I can't demonstrate to you today that he could have met the one-year time bar. That's impossible because he wasn't given access to the information. The position we take is that this procedural error deprived him of an opportunity to do that at the time and that he should be given that opportunity. Go ahead. Did the petitioner equivocate at all in his testimony about when he converted? My recollection is it was pretty clear that he thought he converted in 2016. I think that given the contours of what he understood and his ability to articulate himself, I don't know that I would describe him as equivocating. But in candor, he did not articulate himself in a particularly sort of sophisticated way. And I think it's hard to say based on what he said what would have been said if he'd had the additional information. Do you want to address the withholding of removal claim? Because I've got some concerns about nexus. Yes, sir. So with respect to withholding of removal, the petitioner demonstrated multiple instances of physical harm that he experienced in Russia in the past, thereby establishing past persecution. Whoa, whoa, whoa, whoa. Past persecution on a protected ground. The Refugee Act provides basically five bases. So which ground is he insisting the evidence supports under the Refugee Act? I didn't see any evidence in the record that he holds political opinions that are likely to lead to persecution. Is there anything in the record that I'm missing? There's a series of instances on pages 159 to 166 of the record. If we refer back, he described being threatened by gangs. I understand that alone doesn't establish this. But there was testimony that these gangs were essentially supported by or tolerated by the government, which has the potential to create a nexus. And the injuries were described in a manner that makes them adequate to meet the standard. On the existing record, is Mr. Itzik Tsimok too old to be constricted? Or am I calculating that wrong? At the time of the original hearing, the answer to that was unclear. And it appeared to be yes. As of now, it's also unclear. Given the ongoing issues in Russia, there's reason to believe that the conscription age either has been and or will be increased, which kind of underscores a point that we've tried to make here the whole time, which is that even though the circumstances changing in Russia is a more proper subject for a motion to reopen, which is why we filed one, it also sheds some light on the inherently opaque nature of what's been going on there this whole time, including at the time of this hearing. So while there is not evidence that establishes that he would be conscripted if he was sent back, it is not at all clear that he would not be. You're at three minutes. Do either of my colleagues have any additional questions? No. All right. So you want to reserve the balance of your time? Yes, Your Honor. Okay. All right. We'll hear from the government. Good afternoon. You're muted. I'm sure you're brilliant, but you're muted. I pressed it and unpressed it. May it please the court, Jeffrey Leist appearing on behalf of the Attorney General. Substantial evidence supports the agency's denial of the petitioner's applications for asylum and related relief and protection. As the court noted, the agency properly found that the asylum application was not timely filed. The petitioner, throughout his entire proceedings, as well as what he filed with the board, indicated that he converted or began practicing Mormonism in the summer of 2016. He never wavered from that. There was never any wiggle room in that. That was his testimony over and over and over again. Regarding the possible testimony of Jenny Scott, he simply has not shown that even if he had been given that opportunity, that that would have somehow changed things. There's no indication that she would have testified. There's no indication of what she would have said. Even now, the petitioner has never actually alleged when the proper time should count from. He's never said, well, actually, no, I officially converted my mind in 2017 or whatever. There simply is no evidence to suggest that his conversion happened any time after his indicated September or, excuse me, the summer of 2016. So the agency properly determined that he failed a timely filed asylum application. Regarding his applications for withholding of removal and protection under the torture convention, the record simply does not compel the conclusion that it is more likely than not that he will face persecution or torture if he returns to Russia. The record seems to reflect that Russia does arrest individuals for evading conscription and on occasion abuses arrestees. Does this support his request for withholding of removal? I don't believe so, Your Honor, because his request is essentially speculative. As the court noted, there's no indication from the record that he would actually be subjected to conscription if he returned. The record indicated that it was between the ages of 18 and 27. He was 31 at the time of his hearing. There's no indication that if he returned, he would actually face any penalties for being outside of the country during that conscription period. The record indicated that roughly half of those eligible to be conscripted were evading conscription. So it simply cannot be established that, you know, A, he would face conscription, B, that he would face any penalties if he evaded conscription. Moreover, there's no indication that he would actually be subjected to persecution as opposed to prosecution. The evidence is simply insufficient to demonstrate that it is more likely than not that this kind of string of suppositions would happen such that he would be subjected to persecution. If the conditions in Russia have changed, are there any avenues of relief that Mr. Ektasema can pursue? Look, he has the pending motion to reopen, Your Honor, and that would be the appropriate venue for doing so. So he's filed a motion to reopen arguing changed country conditions, and the board will adjudicate that based on the argument and the evidence that's been submitted. And you have not joined in that? It's not really our position to join. It would be DHS's position to join in the motion to reopen. But we don't join in motion to reopen because those are filed before the board, and that's DHS's still in charge at that point in time. Okay. Regarding his Mormonism, he hasn't shown, again, that it's more likely than not that he would face persecution on that basis. And as far as his torture claim, he has not shown it as more likely than not that he will face torture. The fact that torture exists in Russia and that there's incidents of torture that happen is insufficient to demonstrate the requisite individualized risk of torture. There's simply no evidence in the record that anyone has any intent of torturing the petitioner if he returns back to Russia, and the fact that, you know, there's country conditions indicating that torture exists in Russia is not sufficient for him to meet his burden of proof. The court has no further questions? I don't have any. We do not appear to. Okay. Thank you. All right. We'll go back to the petitioner. Thank you, Your Honors. I would encourage the court in response to consider, most importantly here, is to consider all of these issues collectively. The government has parsed them into military issues, religion issues, pro-Western issues, and addressed each separately, but the case law makes clear that these issues have to be considered in conjunction with one another. Here we have issues relating to individual freedom of expression, Western expression, and military issues. At the moment, the situation in Russia, both as it is now and as we're learning it has been for a long time, including at the time of the hearing, this is a particular synergy of problems that this particular petitioner presents in connection with this particular country. So considering all of these things in conjunction with one another as a set, as a specific set of things, casts this case in a very different light than if you were to go through them one at a time in sort of a checkbox format. And so in considering these issues in a collective fashion, we submit that the court should remand this case for a new hearing at which the petitioner would have counsel and would be able to present all these issues to the immigration judge, both based on all the issues we've discussed today and also based on change of entry conditions. And with that, I will take any questions. Where is he right now? Where is your client right now? He is in the United States. He's no longer in custody. All right. Well, we would like to thank you for handling this case pro bono. The court always appreciates when members of our bar come forward to assist us on these issues because obviously there isn't a right to counsel on these cases and sometimes the cases certainly can be complicated, and we appreciate your efforts, and we also appreciate the government's efforts as well. So thank you from the panel for appearing, and this matter will be submitted as of this date. Court is in recess for today. All rise.
judges: TALLMAN, CALLAHAN, LEE